**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Lee Jones,<br><br>                Plaintiff,<br><br>v.<br><br>Arizona Department of Corrections, et al.,<br><br>                Defendants. | No. CV-14-01689-PHX-DJH (JZB)<br><br>**ORDER** |

On May 18, 2015, Plaintiff Edward Lee Jones, Jr., who is confined in the Arizona State Prison Complex-Eyman in Florence, Arizona, filed a *pro se* civil rights Second Amended Complaint pursuant to 42 U.S.C. § 1983. (Doc. 30.) On June 29, 2015, the Court Screened the Second Amended Complaint, ordered Defendants Ryan, Linderman, Vicklund, Lopez, Woods, Miser, and Forbes to answer portions of Counts One, Two, Three, Seven, Eight, Ten, and Eleven of the Second Amended Complaint, and dismissed the remaining claims and Defendants without prejudice. (Doc. 31.) Now pending before the Court is Plaintiff's Request to Amend Counts 1, 2, 3, 4, 8, 9 and Request to Dismiss With Prejudice Counts 5 and 6 of the Second Amended Complaint. (Doc. 56.) Plaintiff attached a proposed amended complaint to his Motion.[1] As detailed below, the Court will grant Plaintiff's Motion to Amend, order the Clerk to file Plaintiff's proposed Third

---

[1] Plaintiff titled this proposed Amended Complaint as his "Second Amended Complaint." (Doc. 56 at 12-32.) However, the Amended Complaint includes several of the amendments Plaintiff references in his Motion to Amend. Therefore, the Court will construe Doc. 56 at pages 12 through 32 as Plaintiff's proposed Third Amended Complaint.

Amended Complaint, and, after screening, dismiss Plaintiff's claims for conspiracy, Eighth Amendment conditions of confinement claims, and racial discrimination claim, and order Defendants to answer the remaining claims in the Third Amended Complaint.

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681. But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less

stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action, *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

## II. Plaintiff's Third Amended Complaint

In his Third Amended Complaint, Plaintiff sues the following Defendants: Arizona Department of Corrections (ADOC) Director Charles L. Ryan, Pastoral Administrator Mike Linderman, Senior Chaplain J. Vicklund, Warden Ron Credio, Correctional Officer (CO) II/Counselor E. Lopez, Assistant Deputy Warden G. Woods, Lieutenant Swayne, and Unit Chaplain Miser, and CO II/Kitchen Staff (Security) Forbes. In his Request for Relief, Plaintiff seeks declaratory relief, monetary damages, and his costs of suit.

In his Motion to Amend, Plaintiff asserts that he seeks to do the following in his Third Amended Complaint: (1) amend Counts One, Two, Three, Four, and Eight to state a claim based on Plaintiff's inability to properly observe the Islamic practice of Ramadan; (2) state claims for relief against Defendant Credio (Count Four) and Defendant Swayne (Count Nine) sufficient for the Court to issue service packets for those two Defendants; and (3) dismiss Counts Five and Six with prejudice. (Doc. 56.)[2]

Plaintiff asserts that he is a practicing Muslim. He contends that in the Islamic faith, it is not permissible for Muslim males to remove any hair from their beards below a fistful and that beard trimming violates the Sunnah. Plaintiff also asserts that during Ramadan, all Muslims initiate a fast subsequent to the performance of "'Fair' prayer,"

---

[2] Plaintiff also seeks to amend Defendant Woods' name from "G. Woods" to "M. Woods." (Doc. 56 at 4.) However, Plaintiff subsequently withdrew that request after Defendants provided documentation showing that the correct Defendant is Geralynn Woods. (Docs. 54, 58, 64, 77.)

- 3 -

which Plaintiff asserts in 2012, was "performed prior to the meal time of 0500 hours."

### a. Count One

In Count One, Plaintiff alleges that Defendant Ryan violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). Plaintiff claims that Defendant Ryan denied Plaintiff his constitutional right to grow his beard and denied him the opportunity to freely practice his faith during the observation of Ramadan. More specifically, Plaintiff asserts that Defendant Ryan created, implemented, and enforced a prison grooming policy that barred Plaintiff from growing his beard longer than 1/4 of an inch for religious reasons. Plaintiff asserts that Defendant Ryan knew the policy was unconstitutional.

Plaintiff further asserts that according to the Islamic practice of Ramadan, "'Fair' prayer is the start of the fast for Muslims during Ramadan each day," and "according to the Ramadan 2012 prayer time schedule[,] "Fair' prayer on July 20[] had to be performed at approximately 0414 hours[,] no later. Thereafter, a minute or two would be added to that time each day following to perform 'Fair' prayer." Plaintiff contends, however, that Defendant Ryan signed off on a Memorandum, "passed down" by Defendant Linderman to all Units in the Eyman/Florence Complexes, instructing "staff/officials" regarding when the observation of Ramadan could begin and the "feeding timeframe set by Defendant Linderman," which burdened Plaintiff because it forced Plaintiff to either break his fast or starve. Plaintiff asserts that "[b]y July 23[], Ramadan participants started to be called out for Morning feeding subsequent to 'Fair' prayer, placing a burden on individuals such as Plaintiff."

Plaintiff claims that he submitted inmate letters to CO II Cione and A.D.W. Cluff regarding the issue, and, after being denied, submitted a grievance. Plaintiff further claims that "at Defendant's level," Plaintiff "was informed that [he] could start his fast at any time." Plaintiff asserts that "because Ryan is responsible for all the policy and Memorandums signed by him and circulated to be implemented in the ADOC, he should have known or knew those policies and Memorandums were unfair to Muslims and

violated the law." Finally, Plaintiff complains that Defendant should have accepted Plaintiff's proposals to either allow an earlier feeding time during Ramadan or deliver meals to the Housing Units for practicing Muslims during Ramadan.

### b. Count Two

In Count Two, Plaintiff claims that Defendant Linderman violated his rights under RLUIPA and the First Amendment because Defendant Linderman "fashions policies and Memorandums regarding religious activities," "came up with" the 1/4-inch beard length limitation, and denied Plaintiff's requests to grow his beard pursuant to his faith. Plaintiff also claims that Defendant Linderman violated his rights when he "fashioned the morning mealtime during Ramadan [in 2012] at 0500 hours," which "placed a burden on the Plaintiff and other Muslims to either starve or break their fast." Plaintiff contends that Defendant Linderman knew or should have known that his actions were unconstitutional.

### c. Count Three

In Count Three of his Third Amended Complaint, Plaintiff asserts the same allegations as those in Count Three of his Second Amended Complaint. Specifically, Plaintiff claims that Defendant Vicklund violated his rights under RLUIPA and the First Amendment. Plaintiff contends that after Defendant Miser and another chaplain denied Plaintiff's request for a religious shaving waiver and to grow his beard longer than 1/4 inch, Plaintiff requested that Defendant Vicklund overturn those decisions, grant Plaintiff a religious shaving waiver, and allow Plaintiff to grow his beard longer than 1/4 inch. Plaintiff asserts that Defendant Vicklund refused to do so, either claiming that there was no basis for Plaintiff's requests or that Plaintiff needed to write a statement agreeing to comply with ADOC policies in order to receive a waiver. Plaintiff asserts that the statement would have required him to violate his religious customs and practices in order to receive a waiver. Plaintiff contends that Defendant Vicklund would not assign a chaplain to interview Plaintiff without this written statement and that the interview was necessary to obtain the waiver. Plaintiff claims that he complied with Defendant Vicklund's request, but Defendant Vicklund nevertheless denied Plaintiff's requests

based on Plaintiff's "institutional disciplinary record in relation to the subject of following the ten[e]ts of Plaintiff's faith/practic[]es."

Plaintiff also claims that because Defendant Vicklund failed to approve his shaving waiver, Plaintiff was threatened and harassed by ADOC officials and was issued disciplinary infractions for failing to comply with prison policies (presumably regarding facial hair). Plaintiff asserts that because he chose not to abandon his religious practices and beliefs, he was forced, for a year between January 2012 and January 2013, to only eat one meal per day and to not eat meals in the "chow hall."

Plaintiff asserts that in March 2013, Defendant Vicklund finally approved a shaving waiver for Plaintiff, but refused to overturn Defendant Miser's and the other chaplain's prior denial of Plaintiff's request to grow his beard longer than 1/4 inch. Plaintiff also asserts that Defendant Vicklund "conspired" with the other Defendants to deny Plaintiff his rights under RLUIPA and the First Amendment.

### d. Count Four

In Count Four, Plaintiff alleges that Defendant Credio violated his rights under RLUIPA and the First Amendment. Plaintiff asserts that on January 31, 2013, Plaintiff submitted a grievance appeal to Defendant regarding Plaintiff's attempts, over two years, to obtain a shaving waiver, and Defendant Vicklund's recent denial of Plaintiff's request based on Plaintiff's disciplinary record for refusing to shave. Plaintiff asserts that "as a result of not having a waiver[,] Plaintiff was being denied meals (2 in one day) without due process and continuously threaten[ed] with disciplinary for standing firm to his religious beliefs and practices." Plaintiff asserts that in his grievance appeal, he requested a shaving waiver and to receive his meals in his cell.

Plaintiff contends that Defendant Credio responded to Plaintiff's grievance appeal on March 29, 2013. Plaintiff asserts that Defendant Credio stated it is the Chaplain's responsibility to evaluate the validity of Plaintiff's waiver request, and "the intent of Defendant Vicklund's evaluation was not punitive." However, Defendant Credio instructed Plaintiff that "while waiting for approval of any shaving wavier inmates are

- 6 -

1  expected to report to the Chow Hall in Compliance with policy." According to Plaintiff, Defendant Credio further stated that Plaintiff, "by obtaining a medical waiver, was" attempting "to circumvent procedure in order to get any shaving wavier [and] that such acts do[] not demonstrate sincerity if the request for a religious wavier approval [arose] again." Plaintiff claims that Defendant Credio further stated he had investigated Plaintiff's grievance, and concluded that he concurred with the Deputy Warden's determination that Plaintiff would not be able to grow his beard beyond the 1/4 inch level, the policy had been implemented to comply with RLUIPA, the Department had a penological interest in "keeping a safe and secure environment through inmate accountability and ease of identification" and the 1/4 inch limitation "was the least restrictive means" in furthering that interest, in 2013, Plaintiff had signed a waiver agreeing to the 1/4 inch limitation, and he considered "the matter resolved."

Plaintiff also claims that on March 20, 2014, he submitted an inmate letter to Defendant Credio regarding the requirement the Plaintiff cannot grow his beard longer than 1/4 inch, explaining that officials had threatened Plaintiff, and that the beard length policy required Plaintiff to "abandon his religious beliefs and practices." On April 22, 2014, before Defendant Credio responded to Plaintiff's inmate letter, Plaintiff submitted a grievance appeal to Defendant Credio regarding the beard length policy and how it violated Plaintiff's rights. Plaintiff requested a new shaving waiver that complies with his religious beliefs. Plaintiff asserts that he provided "Islamic Literature" to contradict the "mis-information" by Chaplain Daniels that wearing a beard beyond 1/4 inch is a choice within the Muslim faith.

Plaintiff further alleges that on April 28, 2014, Defendant Credio responded to Plaintiff's March 20, 2014 inmate letter, quoted policy, and referenced Plaintiff's shaving waiver, signed by Plaintiff, which states that growing his beard beyond the 1/4 inch level was a choice.

With regard to observing Ramadan, Plaintiff asserts that Defendant Credio failed to act during Ramadan by using an earlier meal time schedule to allow Plaintiff to eat

before fair prayer. Plaintiff alleges that on August 20, 2012, he submitted a grievance appeal to Defendant Credio regarding the negative effects caused by the 0500 meal time during Ramadan. Plaintiff contends that Defendant Credio responded to Plaintiff's grievance appeal, stating that the meal time was "set in order to . . . maintain the safe and secure[] operations of the unit," and "Plaintiff may begin his fast at any time he chooses to do so." Plaintiff asserts that Defendant Credio could have allowed Plaintiff to receive his meals in his cell to accommodate Plaintiff's religious beliefs, which would be a less restrictive means of achieving the penological goal of a safe environment.

### e. Counts Five and Six

Plaintiff removed Counts Five and Six in his Third Amended Complaint.

### f. Count Seven

Plaintiff asserts the same allegations in Count Seven of his Third Amended Complaint as those in Count Seven of his Second Amended Complaint. Specifically, Plaintiff asserts that Defendant Lopez violated his rights under RLUIPA and the First, Eighth, and Fourteenth Amendments. Plaintiff contends that Defendant Lopez "conspired" with Defendant Swayne and another individual to deny Plaintiff food because Plaintiff refused to shave and violate his faith. Plaintiff asserts that Defendant Lopez refused to feed Plaintiff or provide Plaintiff with food twice in a 24-hour period because Plaintiff would not shave for religious reasons. Plaintiff asserts that this was a deliberate act by Defendant Lopez to violate Plaintiff's religious rights. Plaintiff states that there is a possibility that racism played a part in Defendant Lopez's acts because Plaintiff is Black.

### g. Count Eight

In Count Eight, Plaintiff alleges that Defendant Woods violated his rights under RLUIPA and the First Amendment. Plaintiff asserts that in July 2012, he submitted a grievance to Defendant Woods regarding the mealtime schedule interfering with Plaintiff's morning prayer during Ramadan. In his grievance, Plaintiff proposed that the Department utilize a different meal time. Plaintiff contends that on July 30, 2012,

Defendant Woods denied Plaintiff's proposal, and stated that the Unit would not use a different feeding schedule. Defendant Woods stated that she "must defer to the accommodations outlined by Religious Services." Plaintiff asserts that Defendant Woods "failed to address the issue with her superiors or to see if the Plaintiff's issue had validity by contacting outside Islamic Scholars, Imam's or learned individuals in the Practices of Islam." Plaintiff asserts that Defendant Woods' "acts and omissions" have caused Plaintiff injury.

Plaintiff further claims that on January 24, 2013, he submitted a grievance to Defendant Woods regarding being threatened with disciplinary action due to the length of his beard and being denied his meals "unless he accepts the disciplinary infractions." Plaintiff claims that he informed Defendant Woods that he was denied a shaving waiver because he received disciplinary infractions for refusing to shave in accordance with his religious beliefs. Plaintiff requested that he be issued a shaving wavier immediately because his disciplinary record had been clean for 14 months.

Plaintiff contends that Defendant Woods responded on January 29, 2013, and stated that she was unable to deny or approve Plaintiff's request for a shaving waiver. However, Plaintiff contends she effectively denied his grievance by not acting. Plaintiff claims that although Defendant Woods claimed to have consulted with the Unit Chaplin, Defendant Woods failed to consult with the Director or the Attorney General's Office regarding legally required religious accommodations. Finally, Plaintiff asserts that Defendant Woods could have reprimanded the officials who denied Plaintiff his meals, ordered them not to harass Plaintiff, and allowed Plaintiff to receive his meals in his cell, but she took none of those actions.

### h. Count Nine

In Count Nine, Plaintiff alleges that Defendant Swayne violated Plaintiff's rights under RLUIPA and the First Amendment. Plaintiff contends that Defendant Swayne persecuted and targeted Plaintiff because he was Muslim and had defied authority by refusing to shave in accordance with the ADOC's grooming policies. Plaintiff asserts

- 9 -

1    that Defendant Swayne "made it a point to teach Plaintiff a lesson" by taking Plaintiff's
2    shaving waiver, encouraged other officers to issue Plaintiff disciplinary infractions after
3    Defendant Swayne took Plaintiff's shaving waiver if those officers observed Plaintiff not
4    complying with policy, encouraged Non-Muslim, Black inmates to confront Plaintiff
5    regarding his beard and to relay messages that Defendant "would let everything go" if
6    Plaintiff shaved his beard, and never contacted Defendant Ryan or ADOC's legal counsel
7    for guidance regarding Plaintiff's right to grow a beard longer than 1/4 inch. Plaintiff
8    contends that Defendant knew by taking Plaintiff's shaving wavier, Plaintiff would
9    receive disciplinary infractions or be denied meals for practicing Plaintiff's religion.

### i. Count Ten

Plaintiff asserts the same allegations in Count Ten of his Third Amended Complaint as those in Count Ten of his Second Amended Complaint. Specifically, Plaintiff alleges that Defendant Miser violated his rights under RLUIPA and the First, Eighth, and Fourteenth Amendments. Plaintiff contends that Defendant Miser "conspired" with others, including Defendant Vicklund, to deliberately violate Plaintiff's rights. Plaintiff contends that in November 2011, Defendant Miser failed to approve Plaintiff's request for a religious shaving waiver, failed to properly research whether a beard was obligatory for Muslims, failed to contact or consult with a Muslim scholar to determine whether Plaintiff's claim was valid, and failed to consult with Defendant Linderman or ADOC's legal counsel. Plaintiff asserts that Defendant Miser knew or should have known that his actions were unconstitutional. Plaintiff asserts that because Defendant Miser denied Plaintiff's waiver, Plaintiff was denied food on several occasions, was forced to eat just one meal per day for a year, and was continually threatened with disciplinary infractions for keeping his beard and for standing by his religious beliefs.

### j. Count Eleven

Finally, in Count Eleven of his Third Amendment Complaint, Plaintiff asserts the same allegations as those in Count Eleven of his Second Amended Complaint.

Specifically, Plaintiff alleges that Defendant Forbes violated his rights under RLUIPA and the First, Eighth, and Fourteenth Amendments. Plaintiff claims that when he received his meal sack during Ramadan on June 28, 2014, he noticed that some items were missing. Plaintiff contends that he contacted Defendant Forbes, who did not correct the issue and told Plaintiff to contact either Defendant Vicklund or the food services provider. Plaintiff states that other individuals who were observing Ramadan were also missing items and a sergeant intervened and instructed Defendant Forbes to correct the issue. Plaintiff asserts that, thereafter, Defendant Forbes "conspired" with others, including Defendants Swayne and Vicklund, to retaliate against Plaintiff for being a Muslim, for "standing firm on his protected rights" and for causing Defendant Forbes to be corrected by his supervisor. Plaintiff contends that after a conversation with Defendant Swayne, Defendant Forbes sent an e-mail to Defendant Vicklund claiming that Plaintiff had broken his religious fast by eating breakfast in the dining hall and requesting that Plaintiff be removed from the Ramadan meal list. Plaintiff asserts that Defendant Forbes did not investigate the records to determine whether Plaintiff actually had eaten breakfast and that Defendant Forbes's e-mail caused Plaintiff to be removed from the Ramadan meal list without merit and chilled or prevented Plaintiff from fulfilling his obligations pursuant to his religious beliefs. Plaintiff also contends that Defendant Forbes's acts and omissions did not reasonably advance a legitimate correctional goal.

**III.     Discussion of Plaintiff's Third Amended Complaint**

Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362,

371-72, 377 (1976). Conclusory allegations that a Defendant or group of Defendants has violated a constitutional right are insufficient. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

To state a First Amendment, free-exercise-of-religion claim, a plaintiff must allege that a defendant substantially burdened the practice of the plaintiff's religion by preventing him from engaging in a sincerely held religious belief and that the defendant did so without any justification reasonably related to legitimate penological interests *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). A plaintiff must identify the sincerely held religious belief, which defendant substantially burdened the practice of the plaintiff's religion, and how that particular defendant substantially burdened the practice of the plaintiff's religion.

Under RLUIPA, a government may not impose a substantial burden on the religious exercise of a confined person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). Under RLUIPA, the plaintiff bears the initial burden of demonstrating a *prima facie* claim that the challenged state action constitutes a "substantial burden on the exercise of his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). A substantial burden is one that is "'oppressive' to a 'significantly great' extent. That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Id.* at 995 (quoting *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). A substantial burden must be "more than an inconvenience"; it prevents an inmate from "engaging in [religious] conduct or having a religious experience." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1121 (9th Cir. 2000) (citations omitted).

### a. Conspiracy Claims

In several of his counts, Plaintiff alleges that Defendants conspired to violate his

rights. To state a conspiracy claim, a plaintiff "must show 'an agreement or 'meeting of the minds' to violate constitutional rights.'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citation omitted). The Court "need not, however, accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001); *see also Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (conclusory allegations of conspiracy did not support a § 1983 claim); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient."). Plaintiff repeatedly uses the word "conspiracy," but this is insufficient. *See Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff has not made any allegations of an agreement or meeting of the minds between the named Defendants. Nor is there a "conspiracy" simply because Defendants followed the same policy. *See Myers v. City of Hermosa Beach*, 299 Fed. Appx. 744, 747 (9th Cir. 2008) ("Before a conspiracy claim can be sustained, a plaintiff must show a meeting of the minds by the so-called conspirators. . . . However, the evidence adduced must demonstrate more than the mere fact that two people did or said the same thing; the evidence must actually point to an agreement.") (citations omitted). Thus, the Court will dismiss Plaintiff's conspiracy claims.

### b. Conditions of Confinement Claims

In Counts Seven, Ten, and Eleven, Plaintiff appears to be alleging conditions of confinement claims under the Eighth and Fourteenth Amendments. An Eighth Amendment claim requires a sufficiently culpable state of mind by the Defendants, known as "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. To state a claim of deliberate indifference, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be,

objectively, sufficiently serious"; and the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* at 834 (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted). In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

Nothing in Plaintiff's allegations supports a claim that any Defendant was deliberately indifferent to his health or safety. Thus, the Court will dismiss Plaintiff's Eighth and Fourteenth Amendment conditions of confinement claims.

### c. Counts One, Two, and Three

Liberally construed, Plaintiff has stated RLUIPA and First Amendment claims regarding his beard and his inability to observe Ramadan against Defendants Ryan (Count One) and Linderman (Count Two), and RLUIPA and First Amendment claims regarding his beard against Defendant Vicklund (Count Three). Therefore, the Court will require these Defendants to answer those claims. In addition, for the reasons previously stated, the Court will dismiss Plaintiff's conspiracy claim in Count Three.

To the extent Plaintiff seeks to assert claims against Defendant Vicklund in Count Three regarding Plaintiff's inability to observe Ramadan, he fails to state a claim for relief.[3] Plaintiff fails to assert with any specificity what Defendant Vicklund failed to do that hindered Plaintiff's ability to observe Ramadan. Therefore, to the extent Plaintiff is asserting this claim in Count Three, the Court will dismiss it.

### d. Count Four

Liberally construed, Plaintiff has stated RLUIPA and First Amendment claims

---

[3] Plaintiff claims in his Motion to Amend that he is asserting claims against Defendant Vicklund regarding Plaintiff's inability to observe Ramadan. (Doc. 56 at 3.) However, as stated above, Plaintiff asserts the same allegations in Count Three of his Third Amended Complaint as those in Count Three of his Second Amended Complaint.

- 14 -

regarding his beard and his inability to observe Ramadan against Defendant Credio in Count Four. The Court will require Defendant Credio to answer Count Four.

### e.  Count Seven

Liberally construed, Plaintiff has stated RLUIPA and First Amendment claims regarding Defendant Lopez's refusal to feed Plaintiff because Plaintiff would not shave for religious reasons. The Court will require Defendant Lopez to answer this portion of Count Seven.

As previously noted, Plaintiff's allegations are insufficient to state conspiracy and conditions of confinement claims. In addition, Plaintiff's allegations are insufficient to state a racial discrimination claim against Defendant Lopez. Plaintiff simply notes his own race, but makes no allegations to support that Defendant Lopez's actions were motivated by racial animus. Thus, the Court will dismiss Plaintiff's conspiracy, conditions of confinement, and racial discrimination claims against Defendant Lopez.

### f.  Count Eight

Liberally construed, Plaintiff has stated RLUIPA and First Amendment claims regarding his beard and his inability to observe Ramadan against Defendant Woods. The Court will require Defendant Woods to answer Count Eight.

### g.  Count Nine

Liberally construed, Plaintiff has stated RLUIPA and First Amendment claims against Defendant Swayne regarding his conduct related to Plaintiff's beard and shaving waiver. Therefore, the Court will require Defendant Swayne to answer those claims in

Count Nine.[4]

### h. Count Ten

Liberally construed, Plaintiff has stated RLUIPA and First Amendment claims regarding his beard against Defendant Miser. The Court will require Defendant Miser to answer this portion of Count Ten.

For the reasons previously explained, Plaintiff's vague and conclusory allegations are insufficient to state conspiracy and conditions of confinement claims against Defendant Miser. The Court will dismiss these portions of Count Ten.

### i. Count Eleven

Liberally construed, Plaintiff has stated RLUIPA, First Amendment, and retaliation claims against Defendant Forbes. The Court will require Defendant Forbes to answer this portion of Count Eleven.

For the reasons explained above, Plaintiff's vague and conclusory allegations are insufficient to state conspiracy and conditions of confinement claims against Defendant Forbes. The Court will dismiss these portions of Count Eleven.

## IV. Warnings

### a. Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release, or (2) file a non-prisoner application to proceed *in forma pauperis*. Failure to comply

---

[4] To the extent Plaintiff also seeks to assert an equal protection claim against Defendant Swayne in Count Nine by alleging that Defendant Swayne "persecute[ed]" and "targeted" Plaintiff, Plaintiff has failed to state a claim for relief. To show a violation of the Equal Protection Clause, a plaintiff must demonstrate that the defendant acted with a discriminatory intent or purpose that was based upon the plaintiff's membership in a protected class, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), and he must set forth specific facts showing that he was not "afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths." *Freeman v. Arpaio,* 125 F.3d 732, 737 (9th Cir. 1997). Here, Plaintiff fails to set forth sufficient factual allegations to show that Defendant Swayne intentionally acted in a discriminatory manner, or that Plaintiff was not afforded a reasonable opportunity to pursue his faith as compared to inmates of other faiths. Therefore, to the extent Plaintiff seeks to assert an equal protection claim in Count Nine, the Court will dismiss that claim.

may result in dismissal of this action.

### b. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### c. Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. If Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be notified of the requirements for service and copies for the Court that are required for inmates whose cases are not subject to General Order 14-17.

### d. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED** that:

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion to Amend (Doc. 56), and the screening of Plaintiff's Third Amended Complaint. All other matters remain referred to the Magistrate Judge for disposition as appropriate.

(2) Plaintiff's Motion to Amend (Doc. 56) is granted. The Clerk of Court shall file Plaintiff's Third Amended Complaint at Doc. 56, pages 12 through 32.

(3) As to the Third Amended Complaint:

    a) Plaintiff's conspiracy and conditions of confinement claims are dismissed.

      b) Defendant Ryan must answer Count One.

      c) Defendant Linderman must answer Count Two.

      d) Defendant Vicklund must answer the RLUIPA and First Amendment claims in Count Three regarding Plaintiff's beard. The remainder of Count Three is dismissed.

      e) Defendant Credio must answer Count Four.

      f) Defendant Lopez must answer the RLUIPA and First Amendment claims in Count Seven regarding his refusal to feed Plaintiff. The remainder of Count Seven is dismissed.

      g) Defendant Woods must answer Count Eight.

      h) Defendant Swayne must answer the RLUIPA and First Amendment claims in Count Nine regarding his conduct related to Plaintiff's beard and shaving wavier. The remainder of Count Nine is dismissed.

      i) Defendant Miser must answer the RLUIPA and First Amendment claims in Count Ten regarding Plaintiff's beard. The remainder of Count Ten is dismissed.

      j) Defendant Forbes must answer the RLUIPA, First Amendment, and retaliation claims in Count Eleven regarding his request to have Plaintiff removed from the Ramadan meal list. The remainder of Count Eleven is dismissed.

(4) The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Credio and Swayne.

(5) Plaintiff must complete[5] and return the service packets to the Clerk of Court within 21 days of the date of the filing of this Order for Defendants Credio and Swayne. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Third Amended Complaint on those Defendants within 90 days of the filing of the Complaint or within 60 days of the filing of this Order,

---

[5] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

- 18 -

whichever is later, the action may be dismissed as to each Defendant not served. *See* Fed.R.Civ.P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(7) The United States Marshal must retain the Summons, a copy of the Third Amended Complaint, and a copy of this Order for future use.

(8) The United States Marshal must notify Defendants Credio and Swayne of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to these Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:**

(a) personally serve copies of the Summons, Third Amended Complaint, and this Order upon the Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for the Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon the Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Third Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(9) **A Defendant who agrees to waive service of the Summons and Third Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(10) Defendants must answer the relevant portions of the Third Amended Complaint or otherwise respond by appropriate motion within the time provided by the

applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

**Dated** this 5th day of May, 2016.

Honorable Diane J. Humetewa
United States District Judge